IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

RICKY LEE THOMAS,           )
                               )
                 Plaintiff,   )    **CIVIL ACTION**
                               )
v.                          )    No. 06-1224-MLB
                               )
JOHN DURASTANTI,         )
                               )
                 Defendant.  )
_____)

### MEMORANDUM AND ORDER

This case comes before the court on defendant's motion for summary judgment. (Doc. 43). The motion has been fully briefed and is ripe for decision. (Docs. 44, 56, 59, 104, 107). Defendant's motion is denied for reasons herein.

**I.   FACTS**[1]

On January 13, 2006, John Durastanti and Stephen Thompson, federal agents with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), were traveling in an unmarked Ford Explorer and searching for fugitives in Wichita, Kansas. At approximately 3:00 p.m., Durastanti observed a white Lincoln Towncar traveling at a high rate of speed. The Lincoln did not have a license tag in the tagwell area of the vehicle. Durastanti and Thompson pursued the Lincoln and noticed a dealer's tag off to the side of the vehicle. The tag number was called into dispatch and the agents were told that the tag number was not on file. Durastanti radioed to the local police dispatch and requested a marked vehicle to respond. Kansas Highway Patrol Trooper

_____

[1] Additional facts will be discussed, where appropriate, throughout the order.

Thomas Spencer responded.  When the agents were following the Lincoln on the highway, the Lincoln continued driving in excess of the posted speed limit.

The Lincoln exited the highway, turned south and then pulled into a Valero convenience store parking lot.  Spencer followed the Lincoln into the Valero parking lot.  Spencer activated all of his emergency lights and parked approximately one car length behind the Lincoln. Durastanti and Thompson also pulled in and parked the Explorer in the middle of the entrance to the parking lot, facing the Lincoln.  Upon seeing Durastanti and Thompson approach the Lincoln with their guns drawn and in plain clothes, the driver of the Lincoln, Almario Smith, attempted to drive the Lincoln out of the parking lot.  Smith was ducking low in the driver seat in order to avoid any gunfire. Thompson was in front of the Lincoln as it began to move forward. Thompson quickly moved out from the front of the vehicle and then hit the front passenger side window with the butt of his weapon.

Durastanti started to move towards the rear of the Explorer and then saw the Lincoln coming towards him.  Durastanti did not announce that he was a police officer.  Durastanti fired two shots at the driver and was then struck by the Lincoln.  Durastanti went over the hood of the Lincoln and then fired an additional two shots at the driver's side of the Lincoln.  Plaintiff was hit by a single bullet in the inside of his right leg just above the ankle.

II.  **SUMMARY JUDGMENT STANDARDS**

The rules applicable to the resolution of this case, now at the summary judgment stage, are well-known and are only briefly outlined here.  Federal Rule of Civil Procedure 56(c) directs the entry of

summary judgment in favor of a party who "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" if sufficient evidence exists "so that a rational trier of fact could resolve the issue either way" and "[a]n issue is 'material' if under the substantive law it is essential to the proper disposition of the claim." Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 670 (10th Cir. 1998). When confronted with a fully briefed motion for summary judgment, the court must ultimately determine "whether there is the need for a trial-whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). If so, the court cannot grant summary judgment. Prenalta Corp. v. Colo. Interstate Gas Co., 944 F.2d 677, 684 (10th Cir. 1991).

## III. ANALYSIS

Plaintiff asserts that Durastanti violated his Fourth Amendment rights by using excessive force.[2] Durastanti responds that he is entitled to qualified immunity because plaintiff was not seized within the meaning of the Fourth Amendment and, in the alternative, that his actions were reasonable.

### A. QUALIFIED IMMUNITY

---

[2] Plaintiff also argues that his Fifth Amendment rights were violated. Plaintiff's complaint, however, alleges only a violation of his Fourth Amendment rights. (Doc. 1 at 3). Plaintiff has not requested that the court allow him to amend his complaint in accordance with D. Kan. R. 15.1. Accordingly, the court will only evaluate plaintiff's claim under the Fourth Amendment.

-3-

Government officials performing discretionary duties are afforded qualified immunity shielding them from civil damage liability. <u>See Anderson v. Creighton</u>, 483 U.S. 635, 638 (1987). Qualified immunity protects these officials unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known. <u>See Wilson v. Layne</u>, 526 U.S. 603, 609 (1999); <u>Baptiste v. J.C. Penney Co., Inc.</u>, 147 F.3d 1252, 1255 (10th Cir. 1998). The defense not only provides immunity from monetary liability, but perhaps more importantly, from suit as well. <u>See Horstkoetter v. Dept. of Public Safety</u>, 159 F.3d 1265, 1277 (10th Cir. 1998).

"The framework for analyzing claims of qualified immunity on summary judgment is well settled." <u>Baptiste</u>, 147 F.3d at 1255. When a defendant has pled qualified immunity, the plaintiff bears the burden of (1) coming forward with sufficient facts to show that the defendant's actions violated a federal constitutional or statutory right and (2) demonstrating the right allegedly violated was "clearly established" at the time the conduct occurred. <u>See Horstkoetter</u>, 159 F.3d at 1277-78; <u>Baptiste</u>, 147 F.3d at 1255. As noted in <u>County of Sacramento v. Lewis</u>, 523 U.S. 833 (1998), the first step is "to determine first whether the plaintiff has alleged a deprivation of a constitutional right at all." <u>Lewis</u>, 523 U.S. at 841 n.5; <u>Romero v. Fay</u>, 45 F.3d 1472, 1475 (10th Cir. 1995). "Only after determining that [the plaintiff] has alleged a deprivation of a constitutional right, does this court ask whether the right allegedly violated was clearly established at the time of the conduct at issue." <u>Baptiste</u>, 147 F.3d at 1255 n.6.

-4-

To determine whether a plaintiff has sufficiently asserted the violation of a constitutional right at all, this court must decide whether the plaintiff's allegations, if true, state a claim for a violation of a constitutional right.  See Romero, 45 F.3d at 1475 (relying in part upon Siegert v. Gilley, 500 U.S. 226, 231-32 (1991)). Determining whether a plaintiff has stated a claim for a constitutional violation is purely a legal question.  See id.  Despite the inevitable factual issues that become intertwined in the characterization of a plaintiff's precise constitutional claims, this court can not avoid the legal issue by simply framing it as a factual question.  See Archer v. Sanchez, 933 F.2d 1526, 1530 & n.7 (10th Cir. 1991).  For the reasons stated, infra, the court finds that plaintiff has asserted a violation of his Fourth Amendment right against unreasonable seizure.

Once a plaintiff meets this hurdle, the Tenth Circuit requires the contours of the right at issue to be sufficiently clear that a reasonable official would have understood that what he was doing violated a right that was clearly established at the time the alleged acts took place.  See Cruz v. City of Laramie, 239 F.3d 1183, 1187 (10th Cir. 2001); Watson v. University of Utah Med. Ctr., 75 F.3d 569, 577 (10th Cir. 1996).  This standard, however, must be used in a particularized manner[3] because "[o]n a very general level, all

---

[3]    The Tenth Circuit "has held that for a right to be 'particularized,' there must ordinarily be a Supreme Court or Tenth Circuit decision on point, or 'clearly established weight of authority' from other courts." Wilson v. Meeks, 52 F.3d 1547, 1552 (10th Cir. 1995); see also Cruz v. City of Laramie, 239 F.3d 1183, 1187 (10th Cir. 2001); Horstkoetter v. Department of Public Safety, 159 F.3d 1265, 1278 (10th Cir. 1998).

constitutional rights are clearly established." <u>Horstkoetter</u>, 159 F.3d at 1278. Were this level of particularity not required, <u>Harlowe</u> "would be transformed from a guarantee of immunity into a rule of pleading," that would "destroy 'the balance that [Supreme Court] cases strike between the interests in vindication of citizens' constitutional rights and in public officials' effective performance of their duties.'" <u>Anderson</u>, 483 U.S. at 639-40 (quoting <u>Davis v. Scherer</u>, 468 U.S. 183, 195 (1984)). For the reasons stated, <u>infra</u>, the court finds that plaintiff has met the "clearly established" requirement.

If plaintiff successfully thwarts defendant's qualified immunity defense, the ordinary summary judgment burden returns to defendant to show no material issues of fact remain that would defeat the claim of qualified immunity. <u>See</u> <u>Mick v. Brewer</u>, 76 F.3d 1127, 1134 (10th Cir. 1996). This standard requires defendant to show there are no disputes of material fact as to whether his conduct was objectively reasonable in light of clearly established law and the information known to defendant at the time. <u>See</u> <u>id.</u> Even if plaintiff is able to withstand summary judgment, defendant is nonetheless able to reassert the defense of qualified immunity at trial. <u>See</u> <u>Gossett v. Oklahoma Bd. of Regents for Langston University</u>, 245 F.3d 1172, 1181 n.5 (10th Cir. 2001).[4]

**1. Seizure**

Plaintiff asserts that Durastanti violated his Fourth Amendment

---

[4] Even though the cases use the term "qualified immunity," the court does not believe that the jury will decide whether Durastanti is entitled to "qualified immunity" but rather whether he used excessive force. <u>See</u> 8th Cir. Civil Jury Inst. 4.10 (2005).

right to be free from unreasonable seizures by Durastanti's actions in firing the weapon into the car, which resulted in being shot in his leg.   Plaintiff must first establish a seizure occurred and then establish that the seizure was unreasonable.   Katz v. United States, 389 U.S. 347 (1967).

"Violation of the Fourth Amendment requires an intentional acquisition of physical control. A seizure occurs even when an unintended person or thing is the object of the detention or taking, but the detention or taking itself must be willful." Childress v. City of Arapaho, 210 F.3d 1154, 1156-57 (10th Cir. 2000)(quoting Brower v. County of Inyo, 489 U.S. 593, 596, 109 S.Ct. 1378 (1989)). In Childress, the plaintiffs were taken hostage by two fugitives. The fugitives drove a van belonging to one of the plaintiffs and attempted to outrun the police.   During the chase, police officers fired approximately twenty-one rounds at the van. Plaintiffs, a mother and her daughter, were both injured during the shooting.   Defendant asserted that a seizure did not occur because the officers intended to stop the van and the fugitives but not the plaintiffs. The Tenth Circuit agreed.   Childress, 210 F.3d at 1157.   The court found that the officers did not attempt to willfully detain the plaintiffs.

Durastanti asserts that he was attempting to stop the driver, Smith, and did not intend to seize plaintiff. Durastanti, however, testified that at the time of the incident he believed that the car and the occupants had been involved in some sort of violent crime. (Doc. 44, exh. B at 93).   There is no evidence to support the conclusion that Durastanti believed that plaintiff was an innocent victim or some sort of hostage, like in Childress.   The Tenth Circuit

-7-

specifically stated that the officers in <u>Childress</u> were attempting to seize both fugitives, even though only one of the fugitives was operating the vehicle. 210 F.3d at 1157 ("The officers intended to restrain the minivan and the fugitives, not Mrs. Childress and Caitlyn.") Thus, from Durastanti's perspective, plaintiff is more akin to the fugitive who was a passenger in the van, than the hostage plaintiff in <u>Childress</u>.

Accordingly, the court finds that Durastanti intended to stop the Lincoln and all of its occupants when he fired at the Lincoln. His actions resulted in a seizure since a bullet struck plaintiff on his leg. <u>California v. Hodari D.</u>, 499 U.S. 621, 111 S. Ct. 1547, 113 L. Ed.2d 690 (1991)(A "seizure" occurs when a fleeing person is physically touched by police or when he or she submits to a show of authority by police.)

### 2.   Unreasonable Seizure

Next, plaintiff must establish that the seizure was unreasonable. The controlling inquiry is "whether it would be clear to a reasonable officer [in the defendant's position] that his conduct was unlawful in the situation he confronted." <u>Simkins v. Bruce</u>, 406 F.3d 1239, 1241 (10th Cir. 2005) (quoting <u>Saucier</u>, 533 U.S. at 202). Durastanti argues that his use of deadly force was reasonable under the Fourth Amendment because he feared that he was in danger of his life when the Lincoln was driving directly towards him.

Plaintiff responds that the Lincoln was not driving at a dangerous speed but was rolling out of the parking lot when Durastanti got in front of the vehicle. Plaintiff also argues that Durastanti's actions were unreasonable by failing to announce his status as an

officer and that those actions created the need for the deadly force. An officer's use of deadly force is not unreasonable if a reasonable officer in Durastanti's position would have had probable cause to believe there was a threat of serious physical harm to himself. <u>Jiron v. City of Lakewood</u>, 392 F.3d 410, 414 (10th Cir. 2004); <u>Romero v. Bd. of County Comm 'rs of the County of Lake, Colo.</u>, 60 F.3d 702, 704 (10th Cir. 1995).

The actions of all the individuals involved during the incident are in dispute.[5]  At the time the Lincoln initially drove into the parking lot, plaintiff asserts that the individuals in the Lincoln did not know that Trooper Spencer had parked a car length behind them. Plaintiff states that this was not known until the Lincoln drove out of the parking lot.  Plaintiff has also introduced evidence that no individuals in the Lincoln heard Thompson state that he was a police officer.[6]  Various witnesses also did not hear Thompson state that he was an officer.  Witnesses have testified that Thompson yelled stop or that individuals were yelling but the witnesses could not understand what was said.  Differences in eyewitnesses reports regarding the officer's actions are material factual disputes. <u>Allen v. Muskogee, Okl.</u>, 119 F.3d 837, 841 (10th Cir. 1997).

Plaintiff introduced evidence from witnesses to establish that the Lincoln was moving at a very slow speed at the time it left the

_____

[5]  The government attempts to object to various witnesses testimony by stating that the individuals could not have seen the event or that their testimony contradicts itself.  The court cannot make credibility determinations when ruling on a motion for summary judgment.  These arguments are more appropriate for the jury.

[6]  It is uncontroverted that Durastanti did not announce that he was a police officer.

parking lot and hit Durastanti.  The video from Trooper Spencer's vehicle was introduced as evidence but the video does not show the Lincoln until the exact moment that Durastanti rolls over the hood of the vehicle.  The video is not helpful in determining what happened immediately prior to the shooting, but it does clearly display Durastanti continuing to shoot at the fleeing Lincoln after he stood up.  At the time of the additional shooting, the Lincoln is not in Durastanti's path.

While a jury may find that a reasonable officer could have perceived that he was in danger of his life when the Lincoln was driving towards him, the "reasonableness of the use of force depends not only on whether the officers were in danger at the precise moment they used force but also on whether the officers' own conduct during the seizure unreasonably created the need to use such force." Hastings v. Barnes, 2007 WL 3046321 *5 (10th Cir. Oct. 18, 2007)(citing Jiron, 392 F.3d at 415).  The conduct of an officer before the threatened force is relevant if it is immediately connected to the seizure and if it rises to the level of recklessness.  Medina v. Cram, 252 F.3d 1124, 1132 (10th Cir. 2001).  Everything that occurred in the parking transpired in less than one minute. Therefore, the preceding actions of Durastanti were immediately connected and should be included in the reasonableness inquiry. Allen, 119 F.3d at 841.

Plaintiff asserts that the failure to announce their presence as officers, being in plain clothes and pointing their weapons at the Lincoln caused Smith to drive the vehicle out of the parking lot and into Durastanti's path.  In Gutierrez-Rodriquez v. Cartagena, 882 F.2d

-10-

553 (1st Cir. 1989), the First Circuit upheld a jury finding that the officers conduct violated the plaintiff's rights when the plain clothes officers got out of their unmarked vehicle with their guns drawn to question the plaintiff about suspected drug activity. The officers failed to announce that they were police and the plaintiff attempted to drive his vehicle away from the officers. The officers fired at the plaintiff's vehicle without warning. The First Circuit determined that the shooting officer's conduct amounted to a "reckless or callous indifference" to the plaintiff's rights, stating that it was foreseeable that this encounter might result in a discharge of their weapons. Id. at 559-60.

"The display of weapons, and the pointing of firearms directly at persons inescapably involves the immediate threat of deadly force. Such a show of force should be predicated on at least a perceived risk of injury or danger to the officers or others, based upon what the officers know at that time." Holland ex rel. Overdorff v. Harrington, 268 F.3d 1179, 1192 (10th Cir. 2001). At the time of the shooting, the officers had only observed Smith driving in excess of the speed limit.[7] Viewing the allegations and the facts in the light most favorable to plaintiff, agents Thompson and Durastanti's actions in pointing their weapons and failing to demonstrate their status as officers, could be found to be a reckless act given the information they had about the plaintiff and the fellow passengers at the time of the stop.

Moreover, based on the disputed facts about the speed of the

---

[7] There is some question as to whether Smith nearly hit the agents' Explorer.

Lincoln and the position of Durastanti when he fired an additional two rounds at the Lincoln, the court finds that a genuine dispute of material fact exists as to whether a reasonable officer would have used deadly force.  While it is a close question, the court concludes that a jury could find Durastanti's actions objectively unreasonable and, therefore, a violation of plaintiff's Fourth Amendment rights to be free from unreasonable seizures.

### 3.   Clearly Established

Having determined that Durastanti's conduct, as alleged by plaintiff, sufficiently states a violation of plaintiff's Fourth Amendment rights, the court must consider whether that conduct violates "clearly established" law.  The right to be free from excessive force was well established in this circuit at the time of the events in question.  Allen v. Muskogee, 119 F.3d 837, 840-41 (10th Cir. 1997).  Here, however, the inquiry as to clearly established rights is more specific: "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier v Katz, 533 U.S. 194, 201, 121 S. Ct. 2151, 2156 (2001).  As previously stated, the Tenth Circuit has held that "the pointing of firearms directly at persons inescapably involves the immediate threat of deadly force. Such a show of force should be predicated on at least a perceived risk of injury or danger to the officers or others, based upon what the officers know at that time." Holland ex rel. Overdorff v. Harrington, 268 F.3d 1179, 1192 (10th Cir. 2001).  Moreover, it is also clearly established that officers cannot use deadly force to prevent the escape of a suspect.  Ryder v. City of Topeka, 814 F.2d 1412, 1417 (10th Cir. 1987).

The court finds that Durastanti's conduct, as alleged, violated clearly established law.  See Graham v. Connor, 490 U.S. 386 (1989); Carr, 337 F.3d at 1227.  Therefore, a trial will be necessary.  The clerk is directed to return the case to the assigned magistrate judge for completion of discovery and the setting of dates for submission of a pretrial order and for a pretrial conference before the undersigned judge.

**IV.   CONCLUSION**

Durastanti's motion for summary judgment is denied.  (Doc. 43).

A motion for reconsideration of this order pursuant to this court's Rule 7.3 is not encouraged.  The standards governing motions to reconsider are well established.  A motion to reconsider is appropriate where the court has obviously misapprehended a party's position or the facts or applicable law, or where the party produces new evidence that could not have been obtained through the exercise of reasonable diligence.  Revisiting the issues already addressed is not the purpose of a motion to reconsider and advancing new arguments or supporting facts which were otherwise available for presentation when the original motion was briefed or argued is inappropriate.  Comeau v. Rupp, 810 F. Supp. 1172 (D. Kan. 1992).  Any such motion shall not exceed three pages and shall strictly comply with the standards enunciated by this court in Comeau v. Rupp.  The response to any motion for reconsideration shall not exceed three pages.  No reply shall be filed.

IT IS SO ORDERED.

Dated this   29th   day of October 2007, at Wichita, Kansas.

-13-

s/ Monti Belot
Monti L. Belot
UNITED STATES DISTRICT JUDGE